UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JIMMY L. SHIRLEY,    )
    Plaintiff,    )
    )
v.    )   Case No. 1:12-cv-51
    )   (Collier/Carter)
MICHAEL J. ASTRUE    )
Commissioner of Social Security    )
    )

REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion for Judgment on the Pleadings (Doc. 13) and defendant's Motion for Summary Judgment (Doc. 15).

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(I) and 423.

For reasons that follow, I RECOMMEND the decision of the Commissioner be AFIRMED.

Plaintiff's Age, Education, and Past Work Experience

Plaintiff was 54 years old at the time of the ALJ's decision (Tr. 27). Plaintiff has a marginal education, having attended school through the sixth grade (Tr. 27, 135). Plaintiff's past relevant work was as an internal engine assembler for more than 15 years, which the vocational expert (VE) identified as medium exertional, skilled work (Tr. 44, 127-28, 145-46).

1

## Claim for Benefits

Plaintiff filed an application for Disability Insurance Benefits (DIB) on April 11, 2009, alleging disability since December 8, 2008 (Tr. 110-13). Plaintiff's application was denied initially and upon reconsideration (Tr. 53-54). On November 6, 2009, Plaintiff requested a hearing by an administrative law judge (ALJ) (Tr. 67-73). The ALJ held a hearing on July 20, 2010, at which Plaintiff, represented by his attorney, appeared and testified; a vocational expert also testified (Tr. 12-18). On July 23, 2010, the ALJ issued a decision finding Plaintiff was not disabled because he could perform a significant number of jobs in the economy (Tr. 18). The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 1-3). Plaintiff requests that this court remand the case to the Administrative Law Judge for further evaluation and award of benefits. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

## Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a

listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Secretary of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since December 8, 2008, the alleged onset date (20 C.F.R. 404.1571 *et seq*.).

3. The claimant has the following severe impairments: status-post partial colectomy, gouty arthritis and moderate obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), except there should be allowances for bathroom access up to three or four times during the workday, as well as allowances for the individual to alternate sitting and standing at intervals of 45- 60 minutes and that do not involve fine manipulation.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

7. The claimant was born on _____ __, 1956, and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 C.F.R. 404.1563).

8. The claimant has a marginal education and is able to communicate in English (20 C.F.R. 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 8, 2008, through the date of this decision (20 C.F.R. 404.1520(g)).

(Tr. 12-18).

## Issues Raised

Whether the ALJ improperly discounted Plaintiff's testimony and the testimony of the Consultative Examiner regarding the frequency of restroom breaks rendering the denial of benefits unsupported by substantial evidence.

## Relevant Facts

### Testimony

Plaintiff testified that while working for Tecumseh he could not lift more than ten-to-fifteen pounds because it would put pressure on his colon and cause an uncontrollable bowel movement. (Tr. 32, 51-2). Plaintiff testified that during a typical workday he would have four or five episodes of diarrhea each day during a typical eight-hour workday and while most employees were required to stay at their work station and only take scheduled breaks he was allowed to immediately drop what he was doing and proceed directly to the bathroom at any time. In an eight-hour day he would need to be in the restroom about four times. Plaintiff testified that he had at times been able to leave work to go home and change clothes after soiling himself when he was unable to get to the bathroom in time. (Tr. 28- 30). Plaintiff testified that he was able to mow his half-acre lawn with the use of a riding lawnmower, but he often had to stop to run to the bathroom before he finished mowing. (Tr. 38).

### Medical Evidence

The medical record is summarized in detail by the ALJ in his Decision (Tr. 15-17). Plaintiff underwent a total abdominal colectomy in June of 1999. The treating physician, Edwin Shuck, M.D., indicated he removed a significant part of Plaintiff's colon, after finding diverticula in the cecum and throughout the remainder of the colon (Tr. 243-246). On September 13, 2002

5

Plaintiff's gallbladder was removed (Tr. 236,237). Plaintiff continued to complain of frequent diarrhea and cramping. On January 25, 2007, he presented to Jung T. Park, M.D., with nausea and diarrhea. Dr. Park prescribed Phenergan and Lomotil. On February 28, 2007 he returned to Dr. Park with complaints of a rash. There were no complaints related to the colon on that occasion (Tr. 205).

On September 12, 2008 Plaintiff was seen at the emergency room of North Valley Hospital complaining of nausea and diarrhea. A physician prescribed Phenergan and Imodium and released Plaintiff (Tr. 224, 225). A colonoscopy of July 27, 2000 and another on November 21, 2008 revealed no abnormalities (Tr. 235, 241).

Medical evidence also showed Plaintiff had a long history of foot and hand pain related to gouty arthritis. Plaintiff reported he wore wrist braces but still experienced numbing of the hands. He reported the need to elevate his legs on a nightly basis to relieve swelling. (Tr. 331-36, 41-43). In 2004, Plaintiff's primary care physician Debora Daniels, M.D., prescribed a pain killer, Vicodin, and anti-inflammatories, Colchicne and Indocin. This was caused by a flare up in his right great toe (Tr. 310-312).

From 1995 Plaintiff received chiropractic therapy for recurring cervical and lumbar spine pain. In 1997, Dennis Ogrodowcyzk, D. C., attributed Plaintiff's pain to cerviothoracic and lumbar subluxation complex as well as myofaciitis. Treatment included an adjustment, heat and ice, and Tylenol and Advil (Tr. 295).

<u>Consultative Evaluation</u>

On July 18, 2009 Plaintiff was seen by Julian Price, M.D. for a consultative examination. History of present illness was taken which revealed Plaintiff had the majority of his colon

6

removed approximately 10 years prior due to diverticulitis. He reported occasional problems with incontinence, but mostly had issues with diarrhea. He had gout affecting both great toes, both ankles and both hands and wrists. He reported the condition to be severe enough to cause his palms to "go to sleep." He denied any current acute gout flare-up. His hypertension was controlled on oral medication. Dr. Price observed Plaintiff demonstrated full flexion and extension 30 degrees with lateral flexion bilaterally and full rotation. A full range of motion was present in both shoulders, wrists, elbows, knees and feet. He had full range of motion of the hips, knees and ankles. Sensation was intact. He could toe and heel walk and tandem walk without difficulty. He was able to squat to 100% without difficulty. His summary findings were as follows:

> This is a 53-year-old male with gouty arthritis and affecting his hands and feet as well as previous colectomy. With control of his gout the patient should be able to do normal activities without limitations to his lifting, ability to walk, sit or stand. However during an acute gouty flare-up, the affected extremity would be decreased in functional capacity until the acute flare-up would resolve. In regards to his colon problems, he would just need to have the freedom to go to the rest room when needed for a frequent bowel activity secondary to having the majority of his colon removed. In summary, the patient would just need to have freedom to go to the rest room otherwise basically there are no physical limitations during his non-acute gouty flare ups.

(Tr. 383-385 ).

Reviewing Physicians

A Physical Residual Functional Capacity Assessment was prepared on July 29, 2009 by Christopher W. Fletcher, M.D. Dr. Fletcher noted Plaintiff alleged disability due to colon conditions, gout, arthritis, HBP, back problems, foot injury, colectomy and neck and hand pain. He reviewed the history of removal of a majority of his colon 10 years earlier and the presence of occasional incontinence and issues with diarrhea. After a review of the medical records Dr.

Fletcher noted Plaintiff had gout that was non-severe at the time, normal range of motions with some reduction in bilateral wrist with occasional incontinence. Based on those problems he assessed Plaintiff to be able to perform a full range of medium work (Tr. 389-396).

On October 14, 2009, Reeta Misra, M.D. reviewed all of the evidence in the file and the July 29, 2009 assessment of Dr. Fletcher and concurred in the assessment (Tr. 405).

Testimony of the Vocational Expert

The Vocational Expert testified that employees who needed ready [i.e., unscheduled] access to restroom facilities three or four times per day would be unable to perform Plaintiff's past relevant work but that there would be unskilled light jobs that allow for such accommodations but that if the need for restroom access increased to four-to-five times per day that the likelihood of employment was eroded (Tr. 46-48).

Analysis

Is the ALJ's Credibility Determination Invalid Because it is Unsupported by Substantial Evidence?

Plaintiff argues the ALJ's credibility determination regarding the need for frequent unscheduled bathroom breaks and subsequent absence from the work station is erroneous and incomplete. Because of this the denial of benefits is unsupported by substantial evidence. He also argues the ALJ improperly discounted his testimony as well as the Consultative Examiner's assessment regarding the frequency of unscheduled restroom breaks. Therefore, the denial of benefits was not supported by substantial evidence.

He points to the citation by the ALJ of Plaintiff's testimony when the ALJ notes "he operates a riding lawnmower to take care of his half-acre lawn… socializes with friends and family… does household chores and went deer hunting with his father… told his chiropractor he

8

injured his [spine] 'doing work around the house' and concluding these daily activities "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 16). Plaintiff argues this citation to the record by the ALJ is a partial citation which omits other evidence, including his inability to mow the half-acre property without having to stop and go to the bathroom "before I get done" (Tr. 38), and having to get friends to help him out of the woods [due to gout flare-ups] on the rare occasions that he does go hunting and spending most of his time watching TV or reading magazines (Tr. 39 - 40), "socializing only at home" (Tr. 142).

Plaintiff also argues additional evidence by the Consultative Examiner (Julian Price, M.D.) supports his testimony. Dr. Price's summary concludes "In regards to his colon problems, he would just need to have the freedom to go to the rest room when needed for frequent bowel activity secondary to having the majority of his colon removed." (Tr. 385). Plaintiff argues the ALJ did not explain how Dr. Price's conclusion was not supported by the record and the ALJ did not cite whether he afforded Dr. Price's assessment any weight at all.

Finally, Plaintiff objects to the ALJ's basing his decision on Plaintiff's possible failure to maintain "good compliance" with his medication regimen and physician's orders, that "less than good compliance" with hypertension, triglyceride medications or cholesterol medications two-and-a-half years prior to the onset of disability. He argues the evidence cited by the ALJ has nothing to do with Plaintiff's colon resection and subsequent need for frequent and excessive bathroom breaks.

For reasons that follow, I conclude the Plaintiff's arguments fail and further conclude there is substantial evidence to support the Decision of the ALJ. As the Commissioner argues,

9

Plaintiff bears the "ultimate burden" of proving disability under the Act. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see* 20 C.F.R. § 404.1512(a) (a claimant "must furnish medical and other evidence we can use to reach conclusions about [his] impairment(s)"). Most of the treatment records in this case concern the period *well before* the alleged disability onset date of December 8, 2008 (Tr. 203-22, 223-29, 235-59, 261-80, 282-303, 305-53, 359-78). *See* 20 C.F.R. § 404.1512(c) (a claimant must provide evidence showing how his impairments affect his functioning **during the alleged period of disability**); *Foster*, 279 F.3d at 353 ("The burden lies with the claimant to prove that [he] is disabled").

To establish disability under the Act, Plaintiff cannot simply rely on his subjective complaints or symptoms. *See* 20 C.F.R. § 404.1529(a) ("statements about your pain and other symptoms will not alone establish that you are disabled"). To the extent Plaintiff bases his claim on subjective symptoms, such as a frequent need to use the bathroom, he must demonstrate an underlying condition that could cause the symptom, *and* produce evidence of its alleged intensity, persistence, and limiting effect. *See* 20 C.F.R. § 404.1529(b), (c). Clearly there is an underlying condition that could cause the symptoms.

In evaluating the alleged intensity, persistence, and limiting effect of Plaintiff's need to use the bathroom, the ALJ considered whether there were "any inconsistencies in the evidence and the extent to which there [were] any conflicts between [Plaintiff's] statements and the rest of the evidence." 20 C.F.R. § 404.1529(c)(4); *see also* Social Security Ruling (SSR) 96-7p (the alleged intensity, persistence, and limiting effect of subjective symptoms must be evaluated to determine "the extent to which the symptoms limit the individual's ability to do basic work activities"). The ALJ found that Plaintiff's impairments could reasonably be expected to cause

10

an increased frequency in his need to use the bathroom, but his claim regarding its alleged intensity, persistence, and limiting effect was not credible *to the extent it conflicted* with his RFC for a modified range of light work,[1] which included an allowance for bathroom use 3-4 times during an eight-hour workday (Tr. 15). For various reasons, I conclude substantial evidence supports this credibility determination and his RFC assessment.

First, as the ALJ observed (Tr. 15-16), the colectomy surgery, which caused the increased frequency in bathroom use, was performed in June 1999 (Tr. 243-48). Plaintiff continued to work full-time for more than nine years despite this symptom until the plant "closed, shut down" (Tr. 27-28, 127, 145). *See Blacha v. Sec'y of Health & Human Servs.,* 927 F.2d 228, 231 (6th Cir. 1990) (a claimant's continued ability to work undermined allegation of disabling limitations). Further, as the ALJ noted (Tr. 16), post-surgical colonoscopies in July 2000 [2] and November 2008 did not show any abnormalities (Tr. 235, 241). *See* 20 C.F.R. § 404.1529(c)(4) (alleged functional limitations due to subjective symptoms will diminish a claimant's ability to perform basic work activities only to the extent they "can reasonably be accepted as consistent with the objective medical evidence and other evidence"); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir. 2003) (where the ALJ provided a reasonable explanation based on substantial evidence, the court upheld the credibility determination). Therefore, he was able to work in spite of his surgery, which was consistent with the results of the post-surgical

---

1 Modified range of light work is light work, but includes (1) allowance for bathroom access up to 3-4 times during the workday, (2) allowance for a sit/stand option at intervals of 45-60 minutes, and (3) work not involving fine manipulation (Tr. 14, Finding 5).

2 While citing the correct page number within Exhibit 3F for this report, the ALJ inadvertently stated 2002 instead of 2000 (Tr. 16).

colonoscopies. In further support are the opinions of the reviewing physicians of July 29, 2009 and October 14, 2009 assessing Plaintiff to be able to perform medium work after a review of Plaintiff's physical problems (Tr. 389-396, 405).

Next, both treatment records and Plaintiff's own testimony supported the ALJ's RFC assessment. Treatment records from the relevant period after the alleged disability onset date of December 8, 2008, show the *absence* of reported gastrointestinal symptoms by Plaintiff (Tr. 261, 354, 356, 398, 401, 408, 410, 413, 422). These records noted diverticulitis, cholecystectomy, and colon resection *in the past medical or surgical history section*, but the range of symptoms (ROS) section of these records show the absence of any reported gastrointestinal symptoms (Tr. 354, 356, 398, 401, 408, 410, 413, 422). In the July 2010 administrative hearing, Plaintiff testified the frequency in which he uses the bathroom was "just about the same" as it was five years earlier *when he was working full time* at the plant (Tr. 29). The RFC determination included an allowance for bathroom use 3-4 times in an eight-hour workday. This gave nearly full credit to Plaintiff's testimony that he needed to use the bathroom 4-5 times a day (Tr. 28-29). Further, when specifically asked to estimate how many times he would need to use the bathroom in an eight-hour workday, Plaintiff testified "[a]bout four times in eight hours" (Tr. 30). *See* 20 C.F.R. § 404.1529(c)(4); *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 542-43 (6th Cir. 2007) (the credibility of a claimant's subjective symptoms is properly discounted based on inconsistencies in the medical reports, testimony, and other evidence). I conclude this testimony also supports the ALJ's Decision. In further support are the opinions of the reviewing physicians of July 29, 2009 and October 14, 2009 who, after a review of Plaintiff's physical problems, assessed Plaintiff to be able to perform medium work (Tr. 389-396, 405).

Next, in evaluating all of his subjective symptoms (not just the frequency in which he uses the bathroom), which included reported stomach cramps and disabling pain in his feet and hands (Tr. 15,157,159), the ALJ could properly consider Plaintiff's daily activities. (see 20 C.F.R. § 404.1529(c)(3)(i) (daily activities are a relevant factor in evaluating the credibility of a claimant's subjective symptoms). As the ALJ concluded (Tr. 16), Plaintiff's reported activities were one factor undermining his claim of disabling subjective symptoms, including going deer hunting, doing work around the house, socializing with friends, family, and neighbors, and operating a riding lawnmower to mow a half-acre of land (Tr. 38-40, 416). *See* 20 C.F.R. § 404.1529(c)(3)(i); *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 532 (6th Cir. 1997) (an ALJ may consider social and household activities in evaluating a claimant's alleged subjective symptoms); *Blacha*, 927 F.2d at 231 (an ALJ may consider household and social activities in evaluating a claimant's subjective symptoms). There was other testimony from Plaintiff that limited these activities, but I conclude, in light of all the evidence, that the ALJ did not commit reversible error by failing to include all of these alleged limitations in the body of his decision.

Plaintiff argues the ALJ's finding regarding the frequency of his bathroom use was inconsistent with the opinion of consultative examining physician Julian Price, M.D. (*See* Doc. 14, Plaintiff's Brief at 5, 7). Dr. Price opined: "In summary, the patient would just need to have freedom to go to the rest room otherwise basically there are no physical limitations during his non-acute gouty flare ups"[3] (Tr. 385). As the Government argues, even if one were to assume

---

[3] Plaintiff argues the ALJ did not state the weight given to Dr. Price's opinion (see Pl.'s Br. at 7). Actually at one point in the Decision the ALJ stated that he assigned the "greatest weight to the opinion of the consultative examiner, Dr. Price, as it supports my reading of the record as a whole" (Tr. 17). See 20 C.F.R. § 404.1527(d)(2) (while medical source opinions are considered, the final responsibility for determining a claimant's RFC is reserved to the Commissioner); 20

13

the other statement Dr. Price made in this report[4] was somehow inconsistent with a bathroom use allowance of 3-4 times in an eight-hour workday, which the Commissioner disputes, the ALJ did not commit reversible error by not adopting such statement because he would not be bound by the opinion of a Consulting Physician. *See Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 876 (6th Cir. 2007) (unlike treating sources, an opinion from a one-time examiner does not receive special deference or weight); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (the treating physician doctrine assumes that a medical professional who has dealt with a claimant over a long period of time will have a better insight into his medical condition than a physician who has examined the claimant but once); *see also* 20 C.F.R. § 404.1527(d)(2) (while medical source opinions are considered, the responsibility of determining a claimant's RFC is reserved to the Commissioner); *Coldiron v. Comm'r of Soc. Sec.,* 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ-not a physician-ultimately determines a claimant's RFC.").

Finally, I will address Plaintiff's argument that the ALJ impermissibly considered his periods of medication noncompliance because such evidence was not directly related to the increased frequency in his need to use the bathroom (Tr. 16, 207, 338, 340, 343, 345, 351, 356, 398, 401, 408, 422). *See* Pl.'s Br. at 7-8. Generally, an ALJ can consider the non-compliance of a Plaintiff in taking medication. *See* 20 C.F.R. § 404.1529(c)(3) (in evaluating subjective symptoms, an ALJ considers "all of the evidence presented"); 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (the effectiveness of any treatment or medication is a relevant factor in evaluating a claimant's

---

C.F.R. § 404.1545(a)(3) (RFC is "based on all of the relevant medical and other evidence").

4 Prior to providing his summary opinion, Dr. Price noted that Plaintiff "would just need to have the freedom to go to the rest room when needed for a frequent bowel activity secondary to having the majority of his colon removed" (Tr. 385).

14

alleged subjective symptoms); SSR 96-7p ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements."). However, in this case that evidence does seem to be attenuated to the issue before the court. Nevertheless, I conclude any error in considering this would be harmless. That was certainly not the only fact relied on by the ALJ in reaching his conclusion.

After finding that Plaintiff could not perform his past relevant work as an internal engine assembler (Tr. 17, Finding 6), the ALJ assessed whether Plaintiff could perform other work that exists in the national economy. See 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Using the Medical-Vocational Guidelines as a framework, given the nonexertional limitations, the ALJ elicited testimony from a VE based on a hypothetical that accurately described Plaintiff's RFC and vocational profile (Tr. 44-50). In response to this hypothetical, the VE testified that Plaintiff can perform light jobs, such as gluer and warehouse checker, that exist in significant numbers in the national economy[5] (Tr. 44-50). *See* 20 C.F.R. § 404.1560(c)(1) ("We will look at your ability to adjust to other work by considering your RFC and your vocational factors of age, education, and work experience."); 20 C.F.R. § 404.1566(e) (the Commissioner may use a VE to determine whether a claimant can perform other work that exists in the national economy).

While Plaintiff's abilities and overall condition should be accurately described, the hypothetical to the VE "is required to incorporate only those limitations accepted as credible by

---

5 The respective number of jobs is as follows: gluer - 520 state, 140,000 nationwide; and warehouse checker - 1,400 state, 240,000 nationwide (Tr. 46-47).

15

the finder of fact [ALJ]." *Casey*, 987 F.2d at 1235; *see also Foster*, 279 F.3d at 356 (an ALJ need not include limitations in a hypothetical that were discounted as unsupported or inconsistent with the record); *Jones*, 336 F.3d at 476 (an ALJ's credibility determination is accorded great weight and deference on review). An ALJ is not required to accept a response based on restrictions not ultimately included in the RFC determination. Thus, Plaintiff's argument that the ALJ should have relied on the VE's response to an alternate hypothetical with a greater bathroom use allowance (Tr. 47-48) must fail. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 247 (6th Cir. 1987) (while a VE may respond to several hypotheticals with different restrictions, an ALJ is not required to accept a response based on restrictions not ultimately included in the RFC determination); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987) (ALJ was not required to accept VE's response to hypothetical that assumed plaintiff's testimony was entirely credible).

For the above reason, I conclude substantial evidence supports the ALJ's decision that Plaintiff is not disabled under the Act during the relevant period from December 8, 2008, to July 23, 2010. *See* 20 C.F.R. § 404.1520(a)(4)(v) ("If you can make an adjustment to other work, we will find that you are not disabled.").

<u>Conclusion</u>

For the reasons stated herein, I conclude there is substantial evidence to support the conclusion of the ALJ and I therefore RECOMMEND the Commissioner's decision be AFFIRMED.[6]

I further RECOMMEND defendant's Motion for Summary Judgment (Doc. 15) be GRANTED, and plaintiff's Motion for Judgment on the Pleadings (Doc. 13) be DENIED and the case be DISMISSED.

                                        S/*William B. Mitchell Carter*
                                        UNITED STATES MAGISTRATE JUDGE

---

[6] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).